## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID P. AEY,** | ) | **CASE NO.  4:08 CV 405** |
| | ) | |
| **PLAINTIFF,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MAHONING COUNTY BOARD** | ) | **MEMORANDUM OPINION** |
| **OF ELECTIONS,** | ) | **AND ORDER** |
| | ) | |
| **DEFENDANT** | ) | |

On February 19, 2008, Plaintiff filed his Complaint against Defendant, Mahoning

County Board of Elections, seeking, *inter alia*, a declaration that Ohio Revised Code §

311.01 is unconstitutional and that Aey's name, therefore, should be placed back on the

ballot for the March 4, 2008, primary election. (Dkt #1).  Plaintiffs further filed a Motion

for a Temporary Restraining Order and Preliminary Injunction pursuant to FED. R. CIV. P.

65. (Dkt. #4).

## I.     STATEMENT OF FACTS

The Parties agreed to the following stipulation of facts, unless otherwise noted.

(Dkt. # 9).

### A. Protest Proceedings Before the Board

On November 21, 2007, Aey filed a petition for candidacy with the Mahoning County Board of Elections (the "Board"). On January 5, 2008, a protest was filed by intervening Defendant Wellington ("Wellington"), the incumbent Mahoning County Sheriff, and the Board held a hearing on January 18, 2008. Wellington asserts that Aey is not eligible as a candidate for sheriff set forth in R.C. 311.01(B)(9). The statute provides that which provides that a candidate to be sheriff can satisfy R.C. 311.01(B)(9) by any of the following three alternatives:

> (1) have at least two years of supervisory experience as a peace officer at the rank of corporal or above in the five-year period ending immediately prior to the qualification date, (2) be appointed to the highway patrol under R.C. 5503.01 and serve at the rank of sergeant or above in the five-year period ending immediately prior to the qualification date, or (3) satisfactorily complete at least two years of post-secondary education or the equivalent in a college or university.

During the protest hearing before the Board, Aey admitted that he did not qualify for sheriff based on the post-secondary education requirement. Consequently, in order to comply with R.C. 311.01(B)(9), he had to have "at least two years of supervisory experience as a peace officer at the rank of corporal or above" in the specified five-year period. R.C. 311.01(B)(9)(a) and (H)(1). The Board denied Wellington's protest, having determined that Aey met these supervisory requirements. The Board, therefore, placed Aey's name on the ballot.

### B. Writ of Prohibition Before the Ohio Supreme Court

On January 22, 2008, Wellington filed a writ of prohibition before the Ohio Supreme Court. <u>Wellingon</u>, 2008-Ohio-554, at ¶ 2. On February 4, 2008, counsel for Aey filed an *amicus curiae* brief. Before the court rendered an opinion in <u>Wellington</u>, the Board sent out the first set of absentee ballots with Aey's name included on February 8, 2008. The court granted the writ of prohibition on February 14, 2008, however, allowing the Board to exclude Aey's name from the ballot. In response, the Board sent out a notice on February 15, 2008, advising the absentee voters that votes for Aey would not be counted. That same day, the Board advised the printer that Aey's name should be deleted from the ballots. The Board also began removing Aey's name from the electronic voting machines.

As of February 21, 2008, however, 1635 absentee and walk-in voters received ballots or voted on ballots which included the notice that votes for Aey would not be counted. Only 644 of the 1152 voting machines have been programmed to exclude Aey's name from the ballot. Over 500 electronic voting machines booths have been delivered to the voting site and would have to be returned, reprogrammed, tested, and returned to the voting location before the primary election on March 4, 2008. The Board has no policy or procedure on how to identify, contact, and secure a new ballot from those absentee and walk-in voters who received a notification that votes for Aey would not be counted. Thomas McCabe, Director of the Board, stated that any attempt to so would result in in "mass confusion" and possible delay in securing and counting the absentee and walk-in ballots.

### C. The Instant Lawsuit

3

On February 22, 2008, the Court held a hearing on the temporary retraining order ("TRO") an preliminary injunction, attended by counsel for Aey, the Mahoning County Prosecutor's Office, the Office of the Attorney General, and Randall Wellington ("Wellington"). The Court granted Motions to Intervene filed by the Office of the Attorney General and Wellington. (Dkt. # 6, 8). During the February 22 hearing, the Parties agreed to submit briefs by 4:00 p.m. on Monday February 25, 2008. The parties further agreed to consolidate the TRO and Preliminary Injunction as a final hearing for injunctive relief.

## II.   LAW AND ANALYSIS

### A.   Rooker-Feldman and Claim Preclusion

Before proceeding to the merits of Aey's request for injunctive relief, the Court must first address Defendant's jurisdictional challenges. Defendant Intervener Attorney General asserts that Rooker-Feldmen abstention precludes Aey from bringing the instant action because he could have raised a constitutional challenge to R.C. 311.01 before the Ohio Supreme Court in Wellington. Under the Rooker-Feldman doctrine, a federal district court lacks subject matter jurisdiction to review final adjudications of a state court. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); Exec. Arts Studio, Inc. v. City of Grand Rapids, 391 F.3d 783, 793 (6th Cir. 2004); Stemler v. Florence, 350 F.3d 578, 589 (6th Cir. 2003). Where the plaintiffs' complaint amounts to nothing more than a challenge to various state court judgments against them, the action is barred by the Rooker-Feldman doctrine. Tropf v. Fidelity Nat'l Title Ins. Co., 289 F.3d 929, 937 (6th Cir. 2002). This is true even if the state court judgment appears incorrect. Sun Valley Foods Co. v. Detroit Marine Terminals &

4

Fianco (In re Sun Valley Foods Co.), 801 F.2d 186, 189 (6th Cir. 1986).  The federal courts lack jurisdiction even over claims that are inextricably intertwined with a lower state court directing the parties to arbitrate their dispute.  Pieper v. Am. Arbitration Ass'n, Inc., 336 F.3d 458, 462 (6th Cir. 2003).

However, not all constitutional attacks are precluded. If the claims attack the constitutionality of the proceedings themselves, or challenge the statute or authority for the state court proceedings, such claims are permissible.  See Feldman, 460 U.S. at 485-86; Howard v. Whitbeck, 382 F.3d 633, 639 (6th Cir. 2004); Agg v. Flanagan, 855 F.2d 336, 339 (6th Cir. 1988).  The Rooker-Feldman doctrine also does not apply to bar a suit in federal court brought by a party who was not a party in the preceding state court action or against whom there is no state court judgment.  Johnson v. DeGandy, 512 U.S. 997, 1006 (1994); United States v. Muskegon, 298 F.3d 569, 579 (6th Cir. 2002); Gottfried v. Med. Planning Servs., Inc., 142 F.3d 326, 330 (6th Cir. 1998).  However, when the plaintiff is in privity with a party against whom the state court judgment was issued, the Rooker-Feldman doctrine does apply.  McCormick v. Braverman, 451 F.3d 382, 395-96 (6th Cir. 2006).

All Parties agree in the stipulated facts that Aey was not a party to the Wellington action before the Ohio Supreme Court.  Defendant Intervener Attorney General maintains that Aey could have raised his constitutional challenge in Wellington when he filed his *amicus curiae* brief.  However, the Wellington court explicitly stated that Aey could not raise an issue that was not raised by the Board because "*[a]mici curiae* are not parties to an action and may not, therefore, interject issues and claims not raised by parties."  (citing,

Lakewood v. State Emp. Ralations Bd. (1990), 66 Ohio App.3d 387, 394).  Therefore, the

Court finds that the Rooker-Feldman doctrine does not bar Aey's claim because he was not

a party in the preceding state court action.  See Johnson v. DeGandy, 512 U.S. 997, 1006

(1994).

Defendant Intervener Attorney General also claims that Plaintiff is barred by the

doctrine of res judicata from bringing claims that could have raised during the state court

proceedings in Wellington.  "Claim preclusion has four elements in Ohio: (1) a prior, final

valid decision on the merits by a court of competent jurisdiction; (2) a second action

involving the same parties, or their privies, as the first; (3) a second action raising claims

that were or could have been litigated in the first action; and (4) a second action arising out

of the transaction or occurrence that was the subject matter of the previous action."  In re

Fordu, 201 F.3d 693, 703-04 (6th Cir. 1999).  "Issue preclusion applies when a fact or issue

(1) was actually and directly litigated in the prior action, (2) was passed upon and

determined by a court of competent jurisdiction, and (3) when the party against whom

[issue preclusion] is asserted was a party in the privity with a party to the prior action."  Id.

As the Court noted when dispensing with the argument that abstention is proper

under the Rooker-Feldman doctrine, Aey was not a party or in the privity with a party to

the prior action.  As a result, res judicata does not bar Aey's claim.

**B.     Standard of Review Injunctive Relief**

In determining whether to issue a[n] ... injunction, the district court must  consider:

"(1) whether the movant has a strong likelihood of success on the merits; (2) whether the

movant would otherwise suffer irreparable injury; (3) whether issuance of a[n] ... injunction

would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a[n] ... injunction." McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 458 (6th Cir.1995). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." Six Clinics Holding Corp., II v. Cafcomp Systems, 119 F.3d 393, 400 (6th Cir.1997) (*citing* Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir.1994)). "No single factor will be determinative as to the appropriateness of equitable relief, . . . and the district court's weighing and balancing of the equities is overruled only in the rarest of cases." Id. (internal quotation marks and citations omitted). Finally, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Id.

### C.     Standard of Review for the Constitutional Challenge

Plaintiff argues that R.C. 311.01 violates Plaintiff's First and Fourteenth Amendment rights to freedom of speech and association, and equal protection under the law. When reviewing a constitutional challenge to a statute such as R.C. 311.01 that restricts a candidate's ballot access, it is well-settled that the Court applies the following factors: (1) "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate," and (2) "the precise interests put forward by the state as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564 (1983); Burdick v. Takushi, 504 U.S. 428, 434, 112 S.Ct. 2059 (1992); Cicchino v. Luse, 2000 U.S.

Dist. LEXIS 10314, *13 (S.D. Ohio No. C-2-99-1174) (applying <u>Anderson-Burdick</u> test to challenge of R.C. 311.01).[1]

Keeping this analytical framework established in <u>Anderson-Burrdick</u> in mind, the Court now turns to the text of R.C. §311.01(B)(9)(b) to determine how severely its provisions burden Plaintiff's First and Fourteenth Amendment rights.

### 1. Severity of the Burden

In order to determine whether a ballot-access restriction burdens rights severely or incidentally, the Sixth Circuit instructs courts to address two factors: content-neutrality and alternate means of access. See <u>Citizens for Legislative Choice v. Miller</u>, 144 F.3d 916, 921 (6th Cir. 1998). The Sixth Circuit further noted that when evaluating these two factors, a court must keep in mind the following principles:

> First, and most importantly, a law severely burdens voting rights if it discriminates based on content instead of neutral factors. It is especially difficult for the state to justify a restriction that limits political participation by an identifiable  political group whose members share a particular viewpoint, associational preference, or economic status. Second, a law severely burdens voting rights if the burdened voters have few alternate means of access to the ballot. In this situation, the law impermissibly restricts the availability of political opportunity. <u>Id</u>.

### a. Content-neutral

The Ohio Supreme Court has already determined that the requirement of two years of supervisory experience as a peace officer at the rank of corporal or higher under R.C.

---

[1] Plaintiff argues that strict scrutiny applies to Plaintiff's challenge of R.C. 311.01. Plaintiff cites no authority in support of the application of strict scrutiny review to a constitutional challenge of a statute that restricts a candidate's ballot access. To the contrary, the <u>Cicchino</u> applied the <u>Anderson-Bullock</u> test to a challenge under R.C. 311.01. <u>Cicchino v. Luse</u>, 2000 U.S. Dist. LEXIS 10314, *13. As a result, the Court finds Plaintiff's argument without merit.

§311.01(B)(9)(b) is a content-neutral requirement.  Watson, 725 N.E.2d at 259-60, 88 Ohio St.3d 239.  Furthermore, the Sixth Circuit and the Southern District of Ohio have deemed ballot access restrictions imposing life time term limits upon state legislators and peace officer training requirements content neutral, respectively.  Citizens for Legislative v. Miller, 144 F. 3d 916 (6th Cir. 1998); Cicchino, 2000 U.S. Dist. LEXIS 10314, at *15.  R.C. 311.01 does not discriminate on the basis of a candidate's views, party affiliation, or inherently arbitrary factors such as race, religion, or gender.  Id.  Nor does the requirement limit "political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic statute."  Id.  Like the ballot-access restrictions found to be content-neutral,  the only issue here is whether the candidate meets supervisory experience requirements.  Accordingly, the Court finds that R.C. § 311.01(B)(9)(b) imposes a neutral, rather than content-based, burden upon Plaintiff's rights.

### b. Alterative means of access

The statute also provides that the candidate may seek employment with the state highway patrol and appointment to the rank of sergeant or above if a candidate for sheriff fails to meet the requirements in R.C. § 311.01(B)(9)(a).  Prospective candidates may also obtain two years of post-secondary education as another alternative method to run for office. R.C. § 311.01(B)(9)(b); See Watson, 725 N.E.2d at 260, 88 Ohio St.3d 239.  Therefore, because R.C. § 311.01(B)(9)(a) is a content-neutral requirement and provides alternative means to get on the ballot as candidate for sheriff, the Court concludes that the statute imposes a limited burden on Plaintiff's constitutional rights.

For these reasons, the Court concludes that § 311.01 does not severely burden Plaintiff's First or Fourteenth Amendment rights. Accordingly, Ohio need only establish that § 311.01 furthers important, regulatory interests. See Burdick, 504 U.S. at 435.

### 2.	State Interest

The Supreme Court has long recognized that states retain the power to regulate and control their elections through the establishment of ballot-access requirements.  Id. at 433. As Judge Kinnery pointed out in Cicchino, the state of Ohio enacted § 311.01 to ensure that sheriffs know "the laws of the people who they were elected to serve and protect." Cicchino, 2000 U.S. Dist. Lexis 10314, at * 25.  Additionally, the court noted that Ohio has an important interest in assuring that candidates for sheriff are familiar with a wide range of law enforcement topics, and the objective standards in § 311.01 facilitate that goal. Cicchino, 2000 U.S. Dist. Lexis 10314, at * 26.  This rationale was echoed by the Ohio Supreme Court when it upheld the eligibility requirements of § 311.01 one month after the ruling in Cicchino, finding that the of two years of supervisory experience as a peace officer at the rank of corporal or higher was reasonable.  Watson, 725 N.E.2d at 260.

This Court finds the rationale outlined by the  Watson and Cicchino courts for upholding the minimum qualifications established by § 311 to be persuasive.  As a result, this Court ultimately determines that Ohio has important, regulatory interests that justify the limited burdens impose by § 311.01. See Cicchino, 2000 U.S. Dist. Lexis 10314, at * 26.

### C.	Prior Restraint or Licensing Scheme

10

Plaintiff characterizes R.C. 311.01 as a prior restraint or licensing scheme that abridges Aey's freedom of expression under the First Amendment. (Compl. at at ¶ 28). An ordinance or statute constitutes an unlawful licensing scheme when it acts as a "prior restraint," conditioning the exercise of a First Amendment right on the prior approval of government officials, without necessary safeguards. See Nightclubs, Inc. v. City of Paducah, 202 F.3d 884, 889 (6th Cir. 2000); Déjà vu of Nash v. Metro Gov't of Nash., 274 F.3d 377 (6th Cir. 2002). A prior restraint is therefore a governmental attempt, effectuated through a ban or licensing, to suppress communication before it reaches the public. If a statute gives licensing officials overbroad and unbridled discretion because it lacks these proper standards for applying the law, it is void. Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 759 (1988).

Although Aey does not clearly articulate exactly how R.C. 311.01 constitutes a "licensing scheme," the only feasible argument would be that the statute grants unfettered discretion to the county Sheriff or the Board to determine Aey's constitutional rights. To the contrary, R.C 311.01 does not give discretionary authority to the Sheriff discretionary and clearly defines the threshold requirements that any candidate for office must satisfy. As Defendants point out, Plaintiff fails to cite any authority in support of the proposition that prior restraint licensing analysis should be applied to a ballot access statute. Therefore, Aey's attempt to construe as R.C. 311.01 as a licensing scheme or a prior restraint must fail.

**D.    Vagueness**

Plaintiff also claims that R.C. §311.01(B)(9)(b) is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment. Plaintiffs maintain that the post-

secondary education requirement is unconstitutionally vague because "the statute is silent as to what type of course work is needed." (Dkt. # 4).  In Grayned v. City of Rockford, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972), the Supreme Court enunciated standards for evaluating a vagueness claim: "first . . . we insist that the laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . [s]econd, laws must provide explicit standards for those who apply them." Id. at 109.

The degree of vagueness that the Constitution tolerates "depends in part on the nature of the enactment." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).  For example, the Sixth Circuit articulated the applicable degree of scrutiny for ballot access statutes when determining whether the statute was void for vagueness: "although the right of a candidate to ballot access may not necessarily be entitled to the rigorous standard of review given disenfranchisement cases, restrictions on that access must be justified by important state interests at a minimum." Kay v. Austin, 621 F. 2d 809, 811 (6th Cir. 1980).  The Sixth Circuit has thus recognized the tension election regulation creates between state interests and individual rights. Id.

Keeping this analytical framework in mind, the Court now turns to the text of R.C. §311.01(B)(9)(b) to determine whether its provisions are constitutionally vague.  Plaintiff specifically asserts that the post-secondary education requirement in R.C. 311.01(B)(9)(b) is unconstitutionally vague because "the statute is silent as to what type of course work is needed." (Dkt. # 4).  However, the statute clearly states that a prospective candidate for the office of sheriff must have two years of post-secondary education either at a degree-

12

conferring college or university, or in a school registered with the Ohio State Board of Career Colleges and Schools.  See R.C. 311.01(B)(9)(b).  As the Ohio Supreme Court stated in Wellington: "Although we have a duty to liberally construct the statutory limitations on the right to be an eligible candidate for sheriff in order to permit electors to chose from all the qualified candidates, the court cannot liberally construe a statute with an unequivocal and definite meaning."  In fact, at the January 18 Board hearing, Aey acknowledged that he did not have sufficient post-secondary education to qualify him to run for sheriff under R.C. 311.01(B)(9)(b).  See Wellington 2008-Ohio-554 at ¶ 3.  Accordingly, Plaintiff's attempts to challenge the post-secondary education requirements of § 311.01 as vague fail as a matter of law.

## III.    CONCLUSION

As the Court has determined that Plaintiff's challenge to the constitutionality of R.C. 311.01(B)(9)(b) must fail, Plaintiff cannot demonstrate a likelihood of success on the merits. Accordingly, the Court need not address the additional three factors in determining whether injunctive relief is appropriate.

Therefore, Plaintiff's Request for Injunctive Relief is **DENIED** and Plaintiff's Complaint is hereby **DISMISSED**.  (Dkt. # 4).


**IT IS SO ORDERED.**


**/s/ Peter C. Economus - February 26, 2008**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**

13